UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

CONTINENTAL CASUALTY COMPANY
and TRANSPORTATION INSURANCE COMPANY,


         Plaintiffs,


v.                       **MEMORANDUM OF LAW & ORDER**
                          Civil File No. 03-5446 (MJD/JSM)

ADVANCE TERRAZZO & TILE COMPANY, INC.,
JAMES M. FANJOY, and NANCY L. FANJOY,

         Defendants.
_____

Robert Edward Salmon and Sarah E. Greenberg, Meagher & Geer, PLLP, Counsel for Plaintiffs.

Michael J. Rothman, Winthrop & Weinstine, Counsel for Defendant Advance Terrazzo & Tile Company, Inc.

John S. Raboin, Raboin Law Firm, Ltd., Counsel for Defendants James M. Fanjoy and Nancy L. Fanjoy.
_____

## I.    INTRODUCTION

     This matter is before the Court on Plaintiffs' Motion for Summary

Judgment.  [Docket No. 76]  The Court heard oral argument on July 6, 2005.

## II. FACTUAL BACKGROUND

### A. <u>Fanjoy</u> Action in State Court

In March 1999, the Foley Independent School District in Foley, Minnesota, hired Gopher State Contractors, Inc., as the general contractor for construction of a school addition. Gopher State hired Defendant Advance Terrazzo & Tile Company, Inc., as the flooring subcontractor. While laying down the terrazzo flooring, Advance Terrazzo sometimes uses its own propane-powered grinders, which emit carbon monoxide as exhaust.

Defendant James Fanjoy, an independent contractor for the painting subcontractor, Steinbrecher Painting, Inc., was working on drywall at the construction site. According to Fanjoy, on February 7, 2000, for three hours, he was exposed to an excessive amount of carbon monoxide from Advance Terrazzo's propane-powered grinders, causing him to fall and injure his back. He also allegedly suffered various other injuries such as cognitive impairment and depression.

On January 21, 2002, Fanjoy and his wife commenced an action in Anoka County District Court, against Advance Terrazzo, Gopher State, and Steinbrecher Painting. The Fanjoys' complaint alleges that Advance Terrazzo was negligent and that it was involved in a joint enterprise with Gopher State and Steinbrecher, so that the negligence of one is imputed to the others. They also claimed loss of

consortium. In their claims against Advance Terrazzo, the Fanjoys allege that it "failed to provide proper ventilation when operating its floor grinders" and "failed in its duty to properly monitor the work environment for carbon monoxide gas." Advance Terrazzo's insurance companies, Transportation Insurance Company, its commercial general liability insurer, and Continental Casualty Company, its umbrella insurer (collectively "the Insurance Companies") are defending Advance Terrazzo in the state lawsuit.

During discovery in the state lawsuit, another possible source of the carbon monoxide was identified: torpedo heaters used to heat the construction site. The evidence presented to this Court is that the mechanical subcontractor, not Advance Terrazzo, brought the heaters onto the work site, and the school district paid for the heater fuel.

### B.    Current Declaratory Judgment Action Before this Court

On October 1, 2003, the Insurance Companies filed this action seeking a declaratory judgment relating to the general liability policies they issued to Advance Terrazzo. Advance Terrazzo moved to dismiss the Complaint or to stay the action based on the abstention doctrine. The Court denied the motion, in part because it "concluded that the Minnesota courts have provided enough guidance for this Court to resolve the coverage issues." March 15, 2004 Order [Docket No. 24].

The Insurance Companies now seek summary judgment as to whether Continental Casualty Company's insurance policy and Coverage A of Transportation Insurance Company's insurance policy apply to the underlying lawsuit. (They concede that a separate portion of the Transportation insurance contract, Coverage D, the Limited Pollution Coverage – Work Site, does apply to the Fanjoys' claim against Advance Terrazzo.)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." <u>Crawford v. Runyon</u>, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

### B. Interpretation of Insurance Contract Language

All parties agree that Minnesota law applies to this diversity action. Under Minnesota law, the interpretation of the language of an insurance contract is a

4

legal question for the court to decide. <u>White Consol. Indus., Inc. v. McGill Mfg. Co., Inc.</u>, 165 F.3d 1185, 1190 (8th Cir. 1999); <u>Meister v. W. Nat'l Mut. Ins. Co.</u>, 479 N.W.2d 372, 376 (Minn. 1992). Reasonable doubts as to the meaning of the language of the policy should be construed against the insurer, but courts may not read ambiguity into the plain language of the policy in order to construe it against the insurer. <u>Bobich v. Oja</u>, 104 N.W.2d 19, 24 (Minn. 1960). "The initial burden of demonstrating coverage rests with the insured; the burden of establishing the applicability of exclusions rests with the insurer." <u>Domtar, Inc. v. Niagara Fire Ins. Co.</u>, 563 N.W.2d 724, 736 (Minn. 1997). An insurance policy must be read as a whole so as to give effect to all of its provisions. <u>Associated Ind. Dealers, Inc. v. Mutual Serv. Ins. Cos.</u>, 229 N.W.2d 516, 520 (Minn. 1975).

    **C.    Absolute Pollution Exclusion**

Advance Terrazzo's primary policy, issued by Transportation, provides that Transportation will "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or property damage' to which this insurance applies" and that Transportation "will have the right and duty to defend the insured against any 'suit' seeking those damages." Exh. 5 to Salmon Aff. at CL 0128. However, coverage is not available under Coverage A if the so-called absolute pollution exclusion applies. This exclusion states:

    This insurance does not apply to:

* * *

**f.     Pollution**

1. 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

* * *

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants

* * *

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Id. at CL 0129.

An endorsement to the policy amends subparagraph (1)(a) of the absolute

6

pollution exclusion, which addresses pollution on a site "owned or occupied by, or rented or loaned to, any insured," as follows:

This insurance does not apply to:

**POLLUTION**

(1) 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

  However, Subparagraph (a) does not apply to 'bodily injury' if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

Amendment of Pollution Exclusion – Exception for Building Heating Equipment, Id. at CL 0139.

Additionally, another endorsement entitled "Limited Pollution Coverage – Work Sites" adds Coverage D. Coverage D provides up to $100,000 in coverage for damages that Advanced Terrazzo becomes legally obligated to pay because of bodily injury arising out of a pollution incident on its work site that is accidental and begins and ends within seventy-two hours. Id. at CL 0188.

Continental Casualty provided Advance Terrazzo's excess umbrella policy, which provides coverage for bodily injury beyond the limits of the Transportation policy and contains a pollution exclusion that is, in relevant part, identical to the

Transportation absolute pollution exclusion.  Exh. 6 to Salmon Aff at CL 0013.

### D. Interpretation of the Absolute Pollution Exclusion

#### 1. Introduction

Advance Terrazzo claims that the absolute pollution exclusion is ambiguous as applied to routine business hazards such as the release of carbon monoxide from flooring grinders.  Although the Minnesota Supreme Court has addressed the interpretation of an earlier version of the pollution exclusion, the narrower, qualified pollution exclusion, it has not interpreted the absolute pollution exclusion.  When the Minnesota Supreme Court has not decided an issue before the Court, this Court must attempt to predict how the supreme court would resolve that issue.  Sloan v. Motorists Mut. Ins. Co., 368 F.3d 853, 856 (8th Cir. 2004).  The Minnesota Court of Appeals has addressed the absolution pollution exclusion on multiple occasions.  When doing so, the court of appeals has applied the principles of insurance contract interpretation set out in Minnesota Supreme Court precedent and has concluded that the absolute pollution exclusion is unambiguous and is not limited to traditional environmental pollution.

The Insurance Companies assert that this Court should follow the court of appeals precedent as the best indication of how the supreme court would interpret the absolute pollution exclusion.  Advance Terrazzo responds that this

Court should follow case law from other jurisdictions, rather than the Minnesota Court of Appeals cases, in interpreting the exclusion.

### 2. Minnesota Courts Use a Plain Meaning Approach to Interpretation of the Pollution Exclusion

#### a. Minnesota Law

Unlike the majority of jurisdictions, Minnesota courts do not interpret pollution exclusions according to environmental terms of art, which limits them to the traditional view of pollution to the environment and does not include inside contamination. Instead, Minnesota follows the plain meaning approach to interpretation. Am. States Ins. Co. v. Technical Surfacing, Inc., 50 F. Supp. 2d 888, 890 (D. Minn. 1999); see also Auto-Owners Ins. Co. v. Hanson, 588 N.W.2d 777, 779 (Minn. Ct. App. 1999) (noting that "the supreme court applied a non-technical, plain-meaning approach to interpreting a pollution exclusion") (citing Bd. of Regents v. Royal Ins. Co., 517 N.W.2d 888 (Minn. 1994)).

The plain meaning approach to pollution exclusion interpretation was established by the Minnesota Supreme Court in Board of Regents v. Royal Insurance Co. In Royal, the court held that asbestos fibers were excluded under the qualified pollution exclusion, despite the fact that they are not the by-product of industrial pollution or a waste material, but instead are a naturally occurring mineral. Royal, 517 N.W.2d at 892. The court noted that the pollution exclusion before it, like the one before this Court, excluded coverage of "irritants" and

9

"contaminants." It concluded, "We would be doing a disservice to the English language if we were to say that asbestos fibers, which are a health hazard because of their irritant effects on the human body, were not an irritant." Id.

There is no evidence indicating that the Minnesota Supreme Court would abandon the ordinary meaning approach when reviewing an absolute pollution exclusion. In fact, the Minnesota Court of Appeals has rejected cases from other jurisdictions finding that the absolute pollution exclusion's language is ambiguous because "[t]hese [non-Minnesota] cases are premised on a technical rather than an ordinary reading of the exclusion, ascribing to the reader knowledge of 'terms of art' in environmental law and thus are inconsistent with Royal and inapplicable to Minnesota cases." Auto-Owners Ins. Co., 588 N.W.2d at 779 (footnotes omitted).

A federal court should follow the decisions of a state's intermediate courts when they are the best evidence of what the state's highest court would do. Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 883 (8th Cir. 2000); Garnac Grain Co. v. Blackley, 932 F.2d 1563, 1570 (8th Cir. 1991). The Minnesota Court of Appeals has repeatedly found that the absolute pollution exclusion is unambiguous. See, e.g., Auto-Owners Ins. Co., 588 N.W.2d at 779 (finding that absolute pollution exclusion is unambiguous and that lead paint is a pollutant); City of Maple Lake v. Am. States Ins. Co., 509 N.W.2d 399, 406 (Minn.

Ct. App. 1993) (finding that absolute pollution exclusion is unambiguous and that effluent from wastewater treatment plant is a pollutant); League of Minn. Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419, 421 (Minn. Ct. App. 1989) (reasoning that although a chemical compound, such as nitrogen dioxide emitted from a Zamboni, does not irritate the human body when highly diluted, it still qualifies as a pollutant under the absolute pollution exclusion); see also Am. States Ins. Co. v. Technical Surfacing, Inc., 50 F. Supp. 2d 888, 890-91 (D. Minn. 1999) (holding that, although many other jurisdictions disagree, under Minnesota law, the absolute pollution exclusion is unambiguous and applies to xylene fumes from floor sealant).

### b.     Decisions from Non-Minnesota Courts

Advanced Terrazzo asserts that the majority of published state supreme court decisions have found that the absolute pollution exclusion is ambiguous when applied to injuries resulting from negligent use or handling of toxic substances in ordinary business activities. MacKinnon v. Truck Ins. Exchange, 73 P.3d 1205, 1209 n.2 (Cal. 2003). It also directs the Court to multiple state supreme court decisions finding that personal injuries from carbon monoxide or carbon dioxide are not excluded under the pollution exclusion. See, e.g., W. Alliance Ins. Co. v. Gill, 686 N.E.2d 997, 999-1000 (Mass. 1997) (holding that exclusion does not apply to accidents arising during course of normal business

activities such as carbon monoxide poisoning resulting from malfunctioning restaurant oven).

The Court has carefully reviewed Minnesota Supreme Court and Minnesota Court of Appeals precedent in search of an indication that the Minnesota Supreme Court would adopt the sound legal reasoning and policy analysis of the majority view. However, the Minnesota Supreme Court's decision in Royal and the multiple published Minnesota Court of Appeals' opinions clearly indicate that Minnesota follows the minority view when interpreting the pollution exclusion. In Royal, the Minnesota Supreme Court established that it followed a plain meaning approach to pollution exclusion interpretation, instead of the environmental terms of art approach. It also explicitly rejected the reasonable expectations doctrine when interpreting pollution exclusions that are not hidden. Auto-Owners Ins. Co. v. Hanson, 588 N.W.2d 777, 780 n.4 (Minn. Ct. App. 1999). The Minnesota Supreme Court explicitly rejected the argument that asbestos fibers were not pollutants simply because they are not "the by-product of industrial pollution" and are "a naturally occurring mineral." Royal Ins. Co. of Am., 519 N.W.2d at 892.

In fact, many of the decisions from other jurisdictions holding that the pollution exclusion does not apply to carbon monoxide or carbon dioxide poisoning, upon which Defendants rely, acknowledge that Minnesota law would mandate the contrary conclusion. See, e.g., Am. States Ins. Co. v. Koloms, 687

N.E.2d 72, 78 (Ill. 1997) (citing League of Minnesota Cities as contrary authority that would grant exclusion for carbon monoxide poisoning on the grounds that the absolute pollution exclusion is plain and unambiguous)); W. Alliance Ins. Co. v. Gill, 686 N.E.2d 997, 1000 n.5 (Mass. 1997) (citing League of Minnesota Cities as contrary authority that would uphold exclusion of coverage for carbon monoxide poisoning resulting from a malfunctioning or improperly operated restaurant oven); Donaldson v. Urban Land Interests, Inc., 564 N.W.2d 728, 733 n.7 (Wis. 1997) (citing City of Maple Lake as contrary authority that would exclude coverage of injuries arising from exhaled carbon dioxide). See also Am. States Ins. Co. v. Technical Surfacing, Inc., 50 F. Supp. 2d 888, 890 (D. Minn. 1999) (declining to follow Koloms and Western Alliance because Minnesota courts have rejected the view of limiting the pollution exclusion to pollution of the environment as defined as an environmental term of art, and have, instead, adopted the view that the exclusion is given its ordinary meaning, which includes contamination).

### c. Conclusion

The Court concludes that the majority interpretation of the absolute pollution exclusion is the most reasonable and legally defensible manner of interpreting the policy. By limiting the pollution exclusion to traditional environmental pollution, the majority view enforces the expectations of the

13

insured, follows the drafting history of the exclusion, and prevents the exclusion from being read so broadly as to create an exclusion without logical limits.

In contrast, the plain-meaning interpretation employed by Minnesota courts creates a pollution exclusion with almost no limitation.  However, this Court cannot refuse to follow clear Minnesota Supreme Court and Court of Appeals precedent "simply because it believes the . . . court's decision was wrong, bad policy, or contrary to the majority rule in other jurisdictions."  Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1003 (4th Cir. 1998).  Although the Court is hopeful that the Minnesota Supreme Court will readdress the pollution exclusion and adopt the majority view, limiting the exclusion to its reasonable limits, under current Minnesota law, the Court is bound to conclude that the absolute pollution exclusion is unambiguous and encompasses not only traditional environmental pollution, but also incidents arising out of ordinary business activities.

       **3.**       **Application of Minnesota Plain Meaning Interpretation of the Absolute Pollution Exclusion to Carbon Monoxide Poisoning**

       **a.**       **Carbon Monoxide Is a Pollutant**

In this case, under the plain meaning interpretation of the pollution exclusion, carbon monoxide poisoning is excluded from coverage.  Under the facts before the Court, carbon monoxide is a gaseous irritant or contaminant that was discharged or released into the air, irritating Fanjoy's body.  See Bd. of Regents v.

14

Royal Ins. Co., 517 N.W.2d 888, 892 (Minn. 1994) (holding that asbestos fibers were an excluded irritant because they had an irritant effect on the human body); Auto-Owners Ins. Co. v. Hanson, 588 N.W.2d 777, 781 (Minn. Ct. App. 1999) (broadly interpreting the terms "discharge," "dispersal," and "release" "under the ordinary meaning of the terms [to apply to] the chipping and flaking of lead paint"); League of Minn. Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419, 421-22 (Minn. Ct. App. 1989) (applying the absolute pollution exclusion to nitrogen dioxide, a byproduct of a Zamboni, which had built up in an arena); see also Am. States Ins. Co. v. Technical Surfacing, Inc., 50 F. Supp. 2d 888, 890-91 (D. Minn. 1999) (holding that the absolute pollution applies to xylene fumes from floor sealant). Carbon monoxide is not excluded from the policy's definition of pollutant merely because it is naturally occurring, Royal, 517 N.W.2d at 892, because it is not an industrial waste product, id., or "because, at some highly diluted level, it does not noticeably irritate the human body." League of Minn. Cities Ins. Trust, 446 N.W.2d at 421.

    **b.**  **If the Carbon Monoxide Came from the Grinders, It was Brought to the Site**

In order to exclude coverage of Fanjoy's injuries caused by the grinders, the Insurance Companies rely on clause (f)(1)(d)(i) of the absolute pollution exclusion, which applies "if the pollutants are brought on or to the premises, site or location." Advance Terrazzo asserts that it only brought fuel for its grinders to

15

the work site, not the carbon monoxide emitted from the grinders.  Under League of Minnesota Cities, bringing a pollutant-producing machine to a work site triggers this exclusion.  446 N.W.2d at 422 (holding that "merely bringing a Zamboni machine [that emits nitrogen dioxide] on the premises merits exclusion under [the absolute pollution exclusion "brought on"] clause"); see also Am. States Ins. Co. v. Technical Surfacing, Inc., 50 F. Supp. 2d 888, 890-91 (D. Minn. 1999) (holding that the "brought on" clause applied to insured's release of xylene fumes when it brought xylene, not xylene fumes, to the premises because it "did bring the substance onto the premises, albeit in a different form").  By bringing a carbon-monoxide-producing terrazzo floor grinder and its fuel onto the construction site, Advance Terrazzo brought the pollutant onto the site.

### c. If the Carbon Monoxide Came from the Heaters, the Exclusion Still Applies

Advance Terrazzo claims that discovery in the state court case has shown that the carbon monoxide that injured Fanjoy may have come from heaters that were used to heat the work site.  It asserts that it could be liable for that pollution source under the Fanjoys' claim that it negligently failed to safely operate its equipment and to maintain a safe work site and for joint enterprise with the other defendants.  The Exception for Building Heating Equipment provides that subparagraph (f)(1)(a) of the pollution exclusion "does not apply to 'bodily injury' if sustained within a building and caused by smoke, fumes, vapor or soot from

16

equipment used to heat that building." Advance Terrazzo concludes that this heating exception would apply if the carbon monoxide came from the heaters.

Assuming that Advanced Terrazzo could legally be liable for carbon monoxide emitted from the heaters, which Advance Terrazzo did not own, clause (f)(1)(d)(ii), excluding monitoring or testing liability, would bar coverage. If Advance Terrazzo somehow supplied the heaters, clause (f)(1)(d)(i), excluding coverage for pollutants brought on the site, would bar coverage. The heating exclusion does not apply to either clause of subparagraph (f)(1)(d); it applies solely to subparagraph (f)(1)(a), which excludes coverage for pollutants on premises "owned or occupied by, or rented or loaned to" Advance Terrazzo. Thus, the heating exclusion is inapplicable in this case.

### d. The Exclusion Applies to Claims Based on Failure to Monitor or Test

The Fanjoys' failure to monitor allegations are also excluded under clause (f)(1)(d)(i). As the Minnesota Court of Appeals reasoned in <u>League of Minnesota Cities</u>, "once the pollutant was introduced into the occurrence, coverage was properly denied," even for claims of failure to ventilate or failure to test. <u>League of Minn. Cities Ins. Trust v. City of Coon Rapids</u>, 446 N.W.2d 419, 421-22 (Minn. Ct. App. 1989). Additionally, the Fanjoys' failure to monitor allegations are independently excluded under clause (f)(1)(d)(ii) of the pollution exclusion, which excludes coverage for claims based on Advanced Terrazzo's operations to

"to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants."

### e. As It Applies to the Fanjoys' Claims, the Pollution Exclusion Is Unambiguous

Because the Court concludes that, under binding Minnesota law, the absolute pollution exclusion is unambiguous, the drafting history of the clause is not admissible. Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co., 480 N.W.2d 368, 377 (Minn. Ct. App. 1992). Similarly, estoppel cannot apply to expand the Insurance Companies' liability to provide coverage for the carbon monoxide injury. Shannon v. Great Am. Ins. Co., 276 N.W.2d 77, 78 (Minn. 1979). The Court also rejects Advance Terrazzo's request to apply the reasonable expectations doctrine to the exclusion. In Board of Regents v. Royal Insurance Company of America, the Minnesota Supreme Court expressly held that "the reasonable expectations test . . . has no place" when "the pollution exclusion is plainly designated as such." 517 N.W.2d 888, 891 (Minn. 1994). In this case, the pollution exclusion is listed under the heading "Pollution" along with all of the other exclusions to the policy, in the section entitled "Exclusions." Finally, because the Court concludes that Minnesota Supreme Court precedent and relevant Minnesota Court of Appeals precedent clearly dictate the outcome in this case, the Court denies Advance Terrazzo's request to certify the question of whether the absolute pollution exclusion applies to carbon monoxide poisoning

18

arising out of ordinary business activities to the Minnesota Supreme Court. See Minn. Stat. § 480.065, subd. 3 (permitting certification only when "there is no controlling appellate decision . . . of this state").

## IV. CONCLUSION

Because this is a diversity action under Minnesota law, the Court is bound by the decisions of the Minnesota Supreme Court. Absent evidence to the contrary, the decisions of the Minnesota Court of Appeals are the best evidence of how the supreme court would decide the relevant issue. The Court understands Advance Terrazzo's frustration with the broad reading of the pollution exclusion, but as a federal court exercising diversity jurisdiction in this matter, this Court must implement Minnesota law. Until the Minnesota Supreme Court reexamines its method of interpreting pollution exclusions, federal courts must apply the plain meaning approach, despite its illogical results. The Court concludes that the pollution exclusion bars coverage, except for Coverage D of the Transportation policy, of the Fanjoys' claims against Advance Terrazzo.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment [Docket No. 76] is **GRANTED**.

2. It is hereby determined that the bodily injury coverage of Continental Casualty Company's insurance policy does not provide coverage for the underlying lawsuit filed by Defendants Fanjoy against Advance

>   Terrazzo & Tile Company, Inc., based upon the "absolute" pollution exclusion.  Continental Casualty Company has no duty to indemnify or to defend Advance Terrazzo & Tile Company, Inc., in that lawsuit.

3.  It is hereby determined that the bodily injury coverage under Coverage A of Transportation Insurance Company's insurance policy does not provide coverage for the underlying lawsuit filed by Defendants Fanjoy against Advance Terrazzo & Tile Company, Inc., based upon the "absolute" pollution exclusion.  Transportation Insurance Company has no duty to indemnify or to defend Advance Terrazzo & Tile Company, Inc., under Coverage A of its commercial general liability policy.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 10, 2005                     s/ Michael J. Davis
                                           Judge Michael J. Davis
                                           United States District Court